**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CRAIG MIRABILE,

        Plaintiff,

    v.

BANK OF AMERICA,
NATIONAL ASSOCIATION,

        Defendant.

No. 23 CV 1719

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

During the COVID-19 pandemic, plaintiff Craig Mirabile received a series of forbearances on his mortgage loan that temporarily paused his payments. During the forbearance period, defendant Bank of America, the loan servicer, did not report his account as delinquent to credit reporting agencies. Mirabile alleges that near the end of the forbearance period, he entered into an agreement with a Bank of America representative over the phone to defer past-due payments to the end of the loan term. But after he resumed making regular payments, defendant reported the loan as delinquent to credit reporting agencies. Mirabile brings suit under the Fair Credit Reporting Act alleging that Bank of America provided false information to credit reporting agencies and failed to reasonably investigate his dispute. He also brings state-law claims under the Illinois Consumer Fraud Act and for breach of contract. Defendant moves to dismiss the complaint for failure to state a claim. For reasons discussed below, the motion to dismiss is granted in part and denied in part.

## I.    Legal Standards

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

A plaintiff alleging fraud under the Illinois Consumer Fraud Act must meet heightened pleading requirements. *See* Fed. R. Civ. P. 9(b); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019). Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud or mistake." *Id.* They must describe "the who, what, when, where, and how" of the fraud, though the "requisite information as to those five questions may differ" based on the facts of a case. *See Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018). A plaintiff does not need to plead unfair practices with Rule 9(b) particularity. *Vanzant*, 934 F.3d at 739.

## II.   Facts

Craig Mirabile obtained a mortgage loan serviced by Bank of America. [24] ¶ 7.[1] During the COVID-19 pandemic, Mirabile received a series of forbearances from

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

Bank of America under the Coronavirus Aid, Relief, and Economic Security Act. [24] ¶ 9. From March 2020 through September 2021, Mirabile was not required to make monthly payments on the loan, and Bank of America did not report his account as delinquent to credit reporting agencies. [24] ¶¶ 9–10. The forbearance agreement stated that Bank of America would report the loan as delinquent after forbearance ended if the missed payments were not paid or he did not enroll in another loan assistance option. [24] ¶ 10; [24-1] at 2.

A month before the forbearance period was set to expire, Mirabile called Bank of America to explore his options. [24] ¶ 11. The Bank of America representative told him about an option to defer his payments to the end of the loan term. [24] ¶ 11. Mirabile said that he would accept this option. [24] ¶ 11. The representative instructed him to resume making payments in October 2021 when the forbearance plan was scheduled to end. [24] ¶ 11. Mirabile resumed making monthly payments. [24] ¶ 14.

Mirabile called Bank of America several times to request the modification package. [24] ¶ 13; [24-1] at 23. A letter to Mirabile dated February 3, 2022, enclosed the "requested information." [24-1] at 23. The modification package letter itself was dated August 31, 2021, and contained information about the bank's Coronavirus Payment Deferral Program. [24-1] at 24. The program letter stated that the mortgage would be brought current by deferring past-due payments to the end of the loan term. [24] ¶ 13; [24-1] at 24. This amount would not accrue interest. [24] ¶ 13; [24-1] at 24. The agreement would amend the repayment terms of the original note and mortgage.

[24-1] at 33. The letter included a paragraph ("Action to take") instructing Mirabile to sign and return the payment deferral agreement by September 15, 2021. [24-1] at 24.

Bank of America reported Mirabile's account as delinquent to credit reporting agencies.[2] [24] ¶ 16. His Trans Union credit report showed that Bank of America reported him as 120 days delinquent in December 2021 and January 2022. [24] ¶ 16. His Experian credit report showed him as 120–180 days delinquent in December 2021, January 2022, and February 2022. [24] ¶ 16. His Equifax credit report showed him as 180 days past due in November 2021, December 2021, and January 2022. [24] ¶ 16.

Mirabile notified Trans Union, Experian, and Equifax that the loan owed to Bank of America was inaccurately reported as delinquent and requested a correction. [24] ¶ 22, 25; [24-1] at 47. Mirabile also called Bank of America several times to request a correction. [24] ¶ 25. Due to the delinquency reported on his account, Mirabile was unable to obtain a loan and engage in a real estate deal. [24] ¶ 28. He was also charged default-related fees, including a property inspection fee. [24] ¶ 52.

Mirabile brings this suit against Bank of America for violating the Fair Credit Reporting Act. He also brings state-law claims under the Illinois Consumer Fraud Act and for breach of contract of the loan forbearance and modification agreement(s).

---

[2] Bank of America transferred servicing of Mirabile's loan to Specialized Loan Servicing in February 2022. [24] ¶ 17. Specialized Loan Servicing did not report the loan as delinquent to credit reporting agencies.

## III.    Analysis

### A.    Breach of Contract

Mirabile states a claim for breach of contract under Illinois law if he plausibly alleges: (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach.[3] *Ivey v. Transunion Rental Screening Sols., Inc.*, 2022 IL 127903, ¶ 28, 215 N.E.3d 871, 877. "[T]he terms of a written contract can be modified by a subsequent oral agreement [even if] the contract precludes oral modifications." *Tadros v. Kuzmak*, 277 Ill.App.3d 301, 312 (1st Dist. 1995). A modification to a contract must satisfy the same elements of the original contract: offer, acceptance, and consideration. *Scutt v. LaSalle Cnty. Bd.*, 97 Ill.App.3d 181, 185 (3d Dist. 1981). Illinois courts look to the parties' intentions to determine whether a valid contract was formed or "whether some type of formalization of the agreement is required before it becomes binding." *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 588 (7th Cir. 2012). The parties' intent to be bound is measured in objective terms through words and conduct. *Id.*

Mirabile alleges three contractual violations. First, he alleges that Bank of America violated an implied term of his loan that "the holder and servicer would comply with regulatory requirements concerning the loan." [24] ¶ 64. The CARES Act

---

[3] Supplemental jurisdiction exists over Mirabile's state-law claims. The parties cite to Illinois law. If the parties do not raise a choice-of-law issue, a federal court exercising supplemental jurisdiction may apply the substantive law of the forum state. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014).

required Bank of America to offer certain accommodations at the end of the forbearance period, Mirabile accepted the deferred payment accommodation, and defendant treated him as if he were in default. [24] ¶¶ 64–65. So, defendant failed to handle the post-forbearance transition in accordance with the Act. [24] ¶ 66. Bank of America argues that Mirabile doesn't make clear what regulatory duty was violated and that the breach of contract claim is preempted. [26] at 15 n.6.

The preemption provision under the FCRA states: "No requirement or prohibition may be imposed under the laws of any State… with respect to any subject matter regulated under… section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Preemption applies in equal force to state statutory and state common law claims. *See Purcell v. Bank of Am.*, 659 F.3d 622, 623–26 (7th Cir. 2011). The scope of preemption under the FCRA is not without limit. Breach of contract claims that do not arise from a furnisher's responsibilities under 15 U.S.C. § 1681s– 2 are not preempted. *See Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 446 (2d Cir. 2015) ("[The provision] does not preempt state law claims against a defendant who happens to be a furnisher of information to a consumer reporting agency within the meaning of the FCRA if the claims against the defendant do not also concern that defendant's legal responsibilities as a furnisher of information under the FCRA.").

Mirabile's allegation that Bank of America breached an implied term of the loan by failing to comply with the FCRA directly relates to defendant's statutory responsibilities as a furnisher of information. The FCRA preempts this claim. *Todd*

6

*v. Franklin Collection Serv., Inc.*, 694 F.3d 849, 852 (7th Cir. 2012) ("FCRA explicitly preempts state-law claims alleging violations of the federal act.").

Mirabile also alleges that Bank of America violated (1) the initial forbearance agreement and (2) the payment deferral agreement (modifying the original mortgage and note terms). [24] ¶ 67. Defendant points out that neither the forbearance agreements nor the payment deferral letter mentions how credit reporting is supposed to be treated, so there can be no breach of any specific provision. [26] at 15. It is true that there is no language about credit reporting in either, but the forbearance agreement and the payment deferral agreement both contain language about how Bank of America would treat Mirabile's contractual payments. The forbearance agreement states in relevant part that:

> While the Forbearance Plan is in effect, Bank of America, N.A. will not begin foreclosure proceedings on your property or move for a foreclosure judgment or order of sale… Any monthly payments which are deferred will become due upon the conclusion of the Forbearance Plan. Your home loan payments during the Forbearance Plan will not be forgiven, cannot be waived and cannot be automatically deferred by extending your loan term or added to your outstanding loan balance. At the end of the Forbearance Plan period you will need to make the missed payments in full or pursue another solution, such as a loan modification, based on your insurer's or investor's guidelines. Note: This is not a guarantee or promise for post Forbearance Plan payment solutions.

[24-1] at 2 (March 2020 Forbearance Agreement). An allegation of a breach of contract based on a duty arising from an agreement rather than defendant's duties under the FCRA is not preempted. *See, e.g.*, *Causay v. Wells Fargo Bank, N.A.*, No. 16-cv-7398, 2016 WL 7188167, at *5 (N.D. Ill. Dec. 12, 2016) (finding the FCRA did not preempt a breach of express contract claim because the deed imposed by the parties themselves gave rise to the legal duty); *cf. Cipollone v. Liggett Grp., Inc.*, 505 U.S.

7

504, 526 (1992) (holding that a similar preemption provision in the Federal Cigarette Labeling and Advertising Act did not preempt a breach of express warranty claim because "a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a requirement imposed under state law") (internal quotation marks omitted).

Mirabile's breach of contract claim as to the forbearance agreement is not preempted, but he fails to state a claim because there was no breach by defendant. Bank of America did not treat him as delinquent while his loan was in forbearance from March 2020 to September 2021. Bank of America reported him as delinquent once forbearance ended. [24] ¶ 16. Under the terms of the forbearance agreement, the payments were not forgiven, waived, or automatically deferred, and Mirabile was obligated to make the missed payments or pursue another accommodation. [24-1] at 2. The language of the forbearance agreement also states that it did not constitute a guarantee or promise on any post-forbearance payment plan. [24-1] at 2. So, Mirabile's complaint fails to plead any breach of the forbearance agreement.

As for the payment deferral agreement, the parties dispute whether Mirabile's phone call constituted a valid and enforceable oral contract. Bank of America says that Mirabile failed to sign and return the agreement, which was required to bring the loan current and modify the original mortgage loan and note. [24-1] at 27, 33. By failing to sign and return the agreement, Bank of America says that there was no valid contract. Mirabile contends that the August 2021 phone call with a Bank of

America representative constituted a valid oral acceptance of the agreement. [24] ¶¶ 11, 13; [32] at 13.

Mirabile alleges that Bank of America's offer for the Coronavirus Deferral Program was relayed over the phone by the representative. [24] ¶ 11. His complaint only states that the Bank of America representative "discussed his options, which included an option to defer his payments" and that he "told the representative he would accept that option." [24] ¶ 2. Defendant says this is not enough to allege an offer with definite and certain terms, but Mirabile does not need to plead details at this stage. He plausibly alleges an offer by the representative that made "the promises and performances to be rendered by each party… reasonably certain"— Bank of America would defer payments to the end of the loan term and Mirabile would make those payments at the end the loan term rather than when forbearance ended. *See Bus. Sys. Eng'g, Inc. v. Int'l Bus. Machines Corp.*, 547 F.3d 882, 888 (7th Cir. 2008). This is a plausible offer of a contract.

After telling the representative that he would accept that option, the representative instructed Mirabile to resume making payments in October 2021. [24] ¶ 11. Defendant argues that the representative did not tell him that he could accept the offer by resuming monthly payments. Mirabile says that he began making timely payments in accordance with the selection of the accommodation. [24] ¶ 11; [32] at 13. If an offer specifies the place, time, or manner of acceptance, the offeree must comply with those terms to create a binding contract. *Calo, Inc. v. AMF Pinspotters, Inc.*, 31 Ill.App.2d 2, 9 (1st Dist. 1961). But if an offer "merely suggests a permitted

place, time or manner of acceptance, another method of acceptance is not precluded." *Id.* Although Mirabile doesn't allege that the representative told him how to accept the offer, it is a reasonable inference that acceptance could be manifested by following the representative's instruction to resume payments. Mirabile plausibly alleges acceptance.

As for the written agreement mailed to Mirabile that he did not sign and return, defendant points out that the letter containing the payment deferral agreement was dated February 3, 2022. [26] at 16; [24-1] at 23. The deferral agreement itself is dated August 31, 2021, with a "sign and return" date of September 15, 2021. [24-1] at 24. By failing to adhere to the method of acceptance contained in the written agreement, Mirabile never validly accepted and entered payment deferral, says the bank. [26] at 16. Mirabile alleges that Bank of America sent the letter after the August phone call and only after a series of additional calls requesting it. [24] ¶ 13. There are competing inferences that can be drawn from this allegation. One inference is that Mirabile would not have sought out the modification package from Bank of America unless he knew the phone call did not constitute the binding agreement. Another inference is that the bank didn't send the letter dated August 2021 until February 2022 and a timely signature was impossible, making the signature unnecessary to contract formation. Mirabile argues that he entered into a binding agreement via phone call, but it was not yet memorialized in writing. He cites to *Hammer v. Residential Credit Sols., Inc.*, No. 13-cv-6397, 2015 WL 7776807, at *6–7 (N.D. Ill. Dec. 3, 2015), where the court held that a series of phone calls between a

borrower and loan servicer reasonably suggested an intent to enter a binding agreement to modify the loan even though the agreement was not yet executed in writing. Defendant says that *Hammer* is inapplicable because the record in that case showed the parties had negotiated detailed loan terms and agreed to those terms before the agreement was prepared. [34] at 15. The record in this case may reveal the same thing, and at this stage all Mirabile needs to do is plead a plausible claim. "Whether a writing constitutes a binding contract, even though it is not signed, or whether the signing of the instrument is a condition precedent to its becoming a binding contract usually depends upon the intention of the parties." *Lynge v. Kunstmann*, 94 Ill.App.3d 689, 694 (2d Dist. 1981). Resolving a fact-intensive inquiry about the manifestation of intent at the motion to dismiss stage is premature. Accepting plaintiff's facts as true and drawing inferences in his favor, a binding contract was formed in August and the signature and return of the payment deferral letter was not a condition precedent to contract formation.

Mirabile's allegations about the August phone call may be thin, but there are enough facts to "present a story that holds together." *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Here, he has plausibly alleged that he entered into an oral contract to modify the loan and that by treating Mirabile as if he were in default when the past-due payments were not required under the modification, Bank of America breached the agreement.[4]

---

[4] Defendant does not argue that the alleged oral agreement lacked consideration. *See* [26] at 14–15; [32] at 13–14.

### B.     The Fair Credit Reporting Act

The Fair Credit Reporting Act imposes certain duties on "furnishers" who provide consumer credit information to consumer reporting agencies. *See* 15 U.S.C. § 1681s–2(a). The CARES Act amended the FCRA to impose reporting obligations on furnishers who offered an accommodation to consumers during the pandemic. 15 U.S.C. § 1681s–2(a)(1)(F). An accommodation includes any agreement to "defer 1 or more payments, make a partial payment, forbear any delinquent amounts, modify a loan or contract, or any other assistance or relief granted to a consumer" affected by COVID-19 during the covered period.[5] 15 U.S.C. § 1681s–2(a)(1)(F)(i)(I). If a furnisher makes an accommodation and the consumer makes the payments (or is not required to make payments due to an accommodation), then the furnisher is obligated to "report the credit obligation or account as current." 15 U.S.C. § 1681s–2(a)(1)(F)(ii)(I).

If a consumer notifies a credit reporting agency of alleged errors in their report, the credit reporting agency must notify the furnisher of the dispute, and the furnisher is obligated to: "(1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information." *Westra v. Credit*

---

[5] The covered period was from January 31, 2020, until 120 days after the date that the national emergency concerning COVID-19 terminated. 15 U.S.C. § 1681s–2(a)(1)(F)(i)(II).

*Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (citing 15 U.S.C. § 1681s–2(b)). Consumers have a private right of action under § 1681s–2(b) (duties of furnishers upon notice of dispute) but not under § 1681s–2(a) (duties to provide accurate information). *See* 15 U.S.C. § 1681s–2(c)(1). A plaintiff may recover against furnishers who willfully or negligently violate their duties under § 1681s–2(b). *See* 15 U.S.C. §§ 1681n, o. "A willful violation is one committed with actual knowledge or reckless disregard for the FCRA's requirements." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194 (7th Cir. 2021) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)). A furnisher recklessly violates the statute if it commits a "violation under a reasonable reading of the statute's terms" and its reading "[runs] a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.*

To state a claim under 15 U.S.C. § 1681-2(b), Mirabile must: (1) "make a prima facie showing that the data furnisher provided incomplete or inaccurate information" and (2) "show that the incompleteness or inaccuracy was the product of an unreasonable investigation—that is, had the furnisher conducted a reasonable investigation, it would have discovered that the data it provided was incomplete or inaccurate." *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775 (7th Cir. 2023). Incompleteness or inaccuracy means the data provided by the furnisher was patently incorrect or materially misleading. *Id.* at 776. The reasonableness of an investigation is typically a factual question reserved for a jury unless the reasonableness of a furnisher's procedures is "beyond question." *Westra*, 409 F.3d at 827.

13

Mirabile alleges that Bank of America's error was reporting his mortgage loan as delinquent. [32] at 3. He says he accepted an accommodation to defer his payments until the end of the loan term, so he was not delinquent on the payments that were past due after forbearance ended. [24] ¶¶ 16, 22. Mirabile's FCRA claim necessarily rests on whether there was a valid agreement for an accommodation (the payment deferral agreement). Without an accommodation to defer payments, Bank of America did not make any mistake in its report, and Mirabile's account was not current.[6] *See* 15 U.S.C. § 1681s–2(a)(1)(F)(ii)(I). Defendant argues that Mirabile cannot point to any deficiency in its investigation and that his claim is actually based on dissatisfaction with the outcome of the investigation, which is not actionable under the FCRA. [26] at 7–8.

Because Mirabile plausibly alleges an agreement to modify his payment plan, he plausibly alleges an inaccuracy in his account. But he must also sufficiently allege that the inaccuracy would have been discovered if Bank of America conducted a reasonable investigation. *See Frazier*, 72 F.4th at 775. Mirabile says that defendant's violation of the reporting obligations, multiple disputes Mirabile sent by mail and over the phone demanding a change to his credit reporting, and similar consumer complaints all support his claim. [32] at 6. But a furnisher's duty to investigate a

---

[6] Mirabile also cites to a compliance aid issued by the Consumer Financial Protection Bureau and the 2022 Credit Reporting Resource Guide issued by the Consumer Data Industry Association to support his allegation that Bank of America violated its reporting obligations under the FCRA. [24] ¶¶ 20, 21; [32] at 5–6. The CFPB's compliance aid and an industry guide may provide helpful information to consumers and servicers, but they do not give rise to an action for a violation, so I look to the statute itself. *See* 85 Fed. Reg. 4579 (Jan. 27, 2020) ("[R]egulated entities are not required to comply with the Compliance Aids themselves. Regulated entities are only required to comply with the underlying rules and statutes.").

dispute is not triggered by a notice from the consumer, the dispute notice must come from the credit reporting agency itself. *See* 15 U.S.C. § 1681s–2(b)(1). So, Bank of America's lack of response to his direct communications is not a sign of unreasonable investigation.

Mirabile contends that a reasonable investigation normally involves the furnisher looking at a borrower's servicing file and account notes. [32] at 9. If Bank of America had reviewed his file, he says, it would have known that Mirabile received a series of forbearances and had an accommodation to defer payments.[7] What constitutes a reasonable investigation depends on the scope of the notice received by the furnisher from the credit reporting agency. *Woods v. LVNV Funding, LLC*, 27 F.4th 544, 550 (7th Cir. 2022). The dispute notice sent by Mirabile's attorney to the credit reporting agencies states: "We believe that you have been reporting a debt allegedly owed to Bank of America… as delinquent, when it is not. Demand is hereby made that you correct the credit reports of the above individual." [24-1] at 47. Defendant points out that the dispute notice makes no mention of the forbearance agreement, so it falls outside the scope of what Bank of America was expected to reasonably investigate. [26] at 7 n.4. In *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005), the court found that a notice of dispute that an account did not belong to plaintiff did not give adequate notice to the furnisher about the

---

[7] A plaintiff may not amend his complaint through his response brief, *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011), but he is permitted to "elaborate on his factual allegations" so long as those elaborations are "consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citations omitted).

possibility of identity theft. So the furnisher's investigation verifying the plaintiff's name, address, and date of birth was "reasonable beyond question." *Id.* Here, the record does not include the notice that the credit reporting agencies sent to Bank of America. *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 32 (1st Cir. 2010) (noting that the FCRA claim had to be based on the credit reporting agencies' communications to the furnisher and the furnisher's response). If Mirabile's previous disputes mentioned forbearance, the credit reporting agencies conveyed that issue to the bank, and Bank of America's investigation into the account revealed some record of the phone call (including an offer of a post-forbearance accommodation), but no record that the accommodation was accepted, the investigation could reasonably but perhaps mistakenly conclude that there was no error in the credit report. An investigation is not unreasonable merely because the furnisher fails to correct an error. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009). An agent could have looked at Mirabile's account and reasonably concluded that there was no signed agreement, so no there was no accommodation.

On the other hand, drawing all inferences in Mirabile's favor—perhaps too much of a stretch given the paucity of detail in the complaint, but nevertheless consistent with the allegations—the credit reporting agencies put the bank on notice that there was a dispute about forbearance or an accommodation, and Mirabile's account file documented an offer and acceptance of an accommodation effective October 2021. The absence of correction under those facts becomes a plausible allegation that the bank failed to undertake a reasonable investigation. Without the

16

notice sent to Bank of America by the credit reporting agencies and the scope of Bank of America's investigation in the record, it is not clear "beyond question" that Bank of America's investigation was reasonable. *See, e.g., Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (holding that testimony from agents that they did not look beyond information in the computerized information system and did not consult underlying documents supported a finding that the furnisher acted unreasonably in failing to verify the accuracy of disputed information). At this stage, Mirabile plausibly alleges facts suggesting the investigation was unreasonable.

A violation of § 1681s–2(b) alone does not establish that Bank of America acted willfully or negligently.[8] *See* 15 U.S.C. §§ 1681n, o. If Bank of America reviewed Mirabile's account after receiving notice about the dispute, reviewed the relevant records, saw the COVID-19 accommodations, and did not correct the report of delinquency to the credit reporting agencies, then plaintiff plausibly alleges that Bank of America acted knowingly in violation of its duties. Here too, the plausibility of willful conduct depends largely on how Bank of America documented the August phone call or if it even had a record of the payment deferral agreement (assuming there was a valid agreement in the first place). Discovery may prove otherwise, but for now, knowledge and intent can be alleged generally. Fed. R. Civ. P. 9(b). Mirabile has plausibly alleged an inaccuracy in his credit report that Bank of America would

---

[8] Defendant does not address whether plaintiff sufficiently alleged a negligent violation. *See* 26] at 8–10; [34] at 6–8.

have discovered in a reasonable investigation and that the violation of § 1681s–2(b) was willful.

### C.    Illinois Consumer Fraud Act

Mirabile also brings a claim under the Illinois Consumer Fraud Act alleging that Bank of America engaged in unfair and deceptive practices by failing to handle the forbearance and post-forbearance accommodations in accordance with the CARES Act, failing to properly document post-forbearance accommodations and penalizing borrowers due to its own delays, violating the language of its own forbearance and deferred payment option documents, and imposing a default-related charge despite an agreement for an accommodation. [24] ¶¶ 48–54.

To state an ICFA claim under a deception theory, Mirabile must plausibly allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). When evaluating a claim under an unfairness theory, a court considers: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Id.* at 961. Not all three criteria must be met to support a finding of unfairness. *Id.* A practice can offend public policy if it violates a statutory standard of conduct or common law doctrine. *See Ekl v. Knecht,* 223 Ill.App.3d 234, 242 (2d Dist. 1991). Conduct can be oppressive if it "leave[s] the consumer with little alternative except to submit to it." *Robinson*, 775 N.E.2d at 418.

18

An injury must be: (1) substantial, (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces, and (3) could not reasonably have been avoided by consumers. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).

Defendant argues that Mirabile's ICFA claim is preempted by the FCRA. [34] at 8–9. Mirabile contends that the claim is not preempted because improper handling of loan modifications may constitute an unfair and deceptive practice under ICFA. He cites to several cases in which ICFA claims brought against mortgage servicers alleging failure to follow guidelines under the Home Affordable Mortgage Program were not preempted by the underlying statute. In *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 580 (7th Cir. 2012), there was no indication of congressional intent to preempt any state laws imposing parallel obligations to those established in HAMP. *Id.* But the FCRA is a different statute, and it contains a preemption provision, 15 U.S.C. § 1681t(b)(1)(F), which preempts any claims relating to a furnisher's statutory reporting obligations.

Mirabile argues that his ICFA claim is based on Bank of America's failure to properly handle his post-forbearance accommodations and treating him as if he were in default. To the extent that Mirabile's ICFA claim rests on defendant's failure to comply with statutory obligations under the CARES Act, it is preempted by the FCRA. *See Todd*, 694 F.3d at 852. Mirabile says that to the extent his ICFA claim does not rely on alleged violations arising from Bank of America's credit reporting activities, it is not preempted. [32] at 11. But his allegation that defendant violated

the language of its own forbearance and Coronavirus Deferral Program documents is duplicative of his breach of contract claim. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) ("The Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. A deceptive act or practice involves more than the mere fact that a defendant promised something and then failed to do it. That type of misrepresentation occurs every time a defendant breaches a contract.") (cleaned up).

Mirabile points to two unfair or deceptive practices that do not relate to Bank of America's credit reporting obligations or its contractual promises: (1) failing to properly handle documentation of the Deferral Program (including delayed mailing of the letter after he had elected the option over the phone) and (2) charging default-related fees on his account. [24] ¶¶ 48, 50–54; *see LoanDepot.com, LLC*, No. 20-CV-7820, 2021 WL 5038779, at *5 (N.D. Ill. Oct. 29, 2021) (finding that an ICFA claim alleging defendant misled plaintiff about the impact of COVID forbearance on his credit was not preempted because it concerned a customer service representative's statements to plaintiff).

Rule 9(b) requires a plaintiff to allege fraud with specificity, *see Webb*, 906 F.3d at 576, but the complaint does not allege any misrepresentation by Bank of America. The statements made by the representative over the phone, for example, are not alleged to have been false or misleading. *See* [24] ¶¶ 11, 48–54. Mirabile doesn't allege that the representative made any representations about the documentation process

20

or inspection fees, only that there was a representation about a deferred payment option. [24] ¶ 11. Any ICFA claim alleging a fraudulent practice is dismissed.

Mirabile's allegations of defendant mishandling the documentation and improperly charging fees is more appropriately characterized as an unfair-practices claim. Even viewing the facts in a light favorable to plaintiff, Bank of America's delay in sending him requested documentation about the Payment Deferral Program seems like oversight and error. But in any event, Mirabile must plausibly allege that the documentation procedures and inspection fee either violate public policy, rise to the level of oppressive conduct, or cause substantial injury to consumers. *See Robinson*, 775 N.E.2d at 960 (finding that a "bare assertion of unfairness" without describing in what manner the alleged practice violates public policy or is oppressive is insufficient to state a cause of action).

Defendant argues that Mirabile doesn't identify any public policy that would be violated by delayed documentation or the fee. Mirabile says the CARES Act provides the public policy. But Mirabile doesn't point to any standard for procedures within the CARES Act other than its obligations to provide certain accommodations. [24] ¶ 49; [32] at 12. Neither mishandling the documentation nor charging an inspection fee plausibly rise to the level of oppressiveness. Mirabile eventually received the documents in question. And whether a fee is oppressive depends in part on the amount, which Mirabile does not allege. *See Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 834 (7th Cir. 2014). Mirabile's complaint cites to consumer complaints submitted to the Consumer Financial Protection Bureau's database in support of the

fact that Bank of America's practices are not just an isolated incident of harm. [24] ¶ 30; [32] at 12. But the allegations are nevertheless too weak to infer a substantial injury to consumers from paperwork delays and unspecified fees. And given the absence of a public policy violation or oppression, even drawing inferences in plaintiff's favor, the alleged consumer injury does not tilt the scales to suggest ICFA unfairness. The allegations that fall outside of FCRA preemption do not state an ICFA claim.

## IV. Conclusion

Defendant's motion to dismiss for failure to state a claim, [25], is granted in part and denied in part. Plaintiff's claim under the Fair Credit Reporting Act (Count I) and state-law claim for breach of contract, limited to a breach of the August 2021 oral contract, (Count III) survive. Plaintiff's claim under the Illinois Consumer Fraud Act (Count II) is dismissed without prejudice.[9]

ENTER:

_Manish S. Shah_
Manish S. Shah
United States District Judge

Date:   March 22, 2024

---

[9] Ordinarily, a plaintiff should be given at least one opportunity to amend a complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).